NATALIE K. WIGHT, OSB #035576
United States Attorney
District of Oregon
**MIRA CHERNICK, MSB #696845**
Assistant United States Attorney
mira.chernick@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204-2902
Telephone: (503) 727-1000
Attorneys for the United States of America

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**CARLOS MISCOOT**,<br><br>**Defendant.** | **3:24-cr-00241**<br><br>**GOVERNMENT'S MEMORANDUM IN SUPPORT OF DETENTION** |

Defendant Carlos Miscoot is charged with abducting and brutally assaulting and raping his ex-girlfriend (Adult Victim 1 or AV1) after a year of unwanted and persistent contact following their break-up. Defendant forced AV1 into his vehicle at gunpoint, transported her across state lines into a remote, rural area, threatened her life, and forcibly raped her. The violence of the assault, defendant's lack of remorse, his history of repeated, unwanted contact with AV1, and the lengthy sentence of imprisonment he faces reflect his extreme danger to the community and underscore his risk of non-appearance. He should be detained pending trial.

## I. LEGAL STANDARD

Pursuant to the Bail Reform Act of 1984, if, after a detention hearing the court finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer *shall order* the detention of the person before trial." 18 U.S.C. § 3142(e)(1) (emphasis added). The Ninth Circuit has held that detention is appropriate where a defendant is either a danger to the community or a flight risk; the government need not prove both. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). The United States is permitted to proceed by proffer and to submit hearsay evidence with respect to issues of detention. *See United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986) (citing cases).

The defendant is charged with three crimes of violence, including brandishing, carrying, using, and discharging a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). This charge triggers a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(B). Notably, the presumption is not just that a defendant is a danger and a flight risk; rather, the presumption is that there is no combination of conditions that can be fashioned, even the most restrictive ones, that will reasonably assure the defendant's appearance and the safety of the community. The presumption "is not erased when a defendant proffers evidence to rebut it; rather the presumption remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence." *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008).

## II. FACTUAL BACKGROUND

On November 2, 2023, AV1 reported to the Portland Police Bureau (PPB) that earlier that morning she was kidnapped at gunpoint, threatened, driven across state lines, and raped by her ex-boyfriend, defendant Carlos Miscoot. AV1 explained that although she broke up with Miscoot over a year prior, for the past year he had continued to call her, text her, and show up at her home unannounced. The morning of November 2nd, Miscoot contacted AV1 about coming to her house to retrieve an old cell phone of his that she had been using. When Miscoot arrived, AV1 went outside to hand him the phone. As AV1 turned to go back into her house, Miscoot pulled a black pistol out of a bag, forcefully grabbed AV1, and told her to "come with him or he would make her come with him." He put the gun in her back and pushed her forward, saying he would shoot her if she didn't stay quiet. AV1 was crying but went with Miscoot out of fear that he would shoot her and got into his vehicle at gunpoint. PPB Officers later obtained two short surveillance video clips from AV1's front porch camera from that morning. The first clip shows an obscured, unidentifiable male approaching the front door, and the second clip contains off-camera audio of a woman saying "I'm not gonna go. We can talk right here. Why are you [unintelligible]?"

Miscoot drove from AV1's home in Portland to a rural area of Clark County, Washington. During the drive, Miscoot kept the pistol trained on AVI and told her that he would "take her to the mountains and just leave her there" and "if I go to jail someone else will do it." AV1 was crying hysterically. Miscoot repeatedly threatened her family, saying that he had paid someone to find out where her brother worked and where her nieces went to school. He also threatened her father, who lives in Mexico, saying that he could call someone in Mexico and have them hurt her father. When they finally parked near a remote, wooded area, Miscoot ordered AV1 to remove her clothes. AV1 refused and tried to resist until Miscoot pointed the

pistol out the window of the vehicle and fired several times saying, “if you’re not going to give it to me it’s going to be forced” and “if you don’t give me what I want, I’ll leave you naked up here, and I’ll shoot you.” AV1 then complied and Miscoot grabbed her by the neck, pointed the pistol in her face, and forcibly sexually assaulted and raped AV1. Following the rape, Miscoot told AV1 about his plans to kill her in a murder-suicide and tearfully apologized. AV1 tried to convince Miscoot not to leave her in the woods by promising she wouldn’t call police. Miscoot agreed to drive her home. During the drive, Miscoot repeated to AV1 that he would return to her house or have someone else go to her house if she reported the assault to police. In addition to the black pistol, AV1 also described seeing a camouflage rifle (later located during a search and determined to be a crossbow) and arrows in the car. During the drive Miscoot also allowed AV1, at her request, to call her work and report that she would be late, a call that was later corroborated through geolocation data on Miscoot’s cell phone and found to have been made within 2000 feet of the Thrillium Mountain Bike Trail parking lot, a wooded area near Battle Ground, Washington. After being returned home, AV1 went to work, where she broke down in tears and reported the assault to her coworkers. They transported her to the hospital for a sexual assault kit and to make a report to law enforcement. Additional geolocation data from Miscoot’s cellphone on November 2 shows the phone was at AV1’s residence from approximately 8-8:30 am before traveling north into Washington state. The phone arrived at the trail parking lot around 9:20 am and stayed there until around 10:30 am. At approximately 11 am the phone entered the city of Orchards, Washington before moving south on I-205 and arriving back at AV1’s residence around 11:30 am.

On November 8, 2023, Miscoot followed through on his threats and returned to AV1’s residence. AV1 called police and PPB officers responded and took Miscoot into custody. A state

search warrant was obtained following his arrest and Miscoot's vehicle and residence were searched. Officers located the camouflage rifle-like crossbow and a shotgun in his vehicle, as well as ammunition and a pistol magazine. A spent 9mm shell casing was located on the front passenger floorboard. In the residential search, officers located a single .40 caliber bullet and an empty box of .40 caliber ammunition. The black pistol described by AV1 was not located during either search and to date has not been located or secured.

Miscoot was interviewed following his arrest. He admitted going to AV1's house the morning of November 2nd to retrieve a phone from her, but claimed that he left AV1's residence after only a short interaction, went home to take a nap, and later went to work around 2:15pm. Investigators later confirmed through employment records and video surveillance that Miscoot was not scheduled to work on November 2nd and did not ever go to work that day. When asked about the weapons found during the search, Miscoot told officers that the firearms in his vehicle belonged to his cousin, a non-citizen convicted felon with ties to a Mexican gang. Miscoot would not tell officers this cousin's name, and instead offered four different street names or nicknames that the cousin supposedly goes by.

During the investigation, PPB Officers also spoke with AV1's brother, Adult Witness 1 (AW1) who reported that he personally had seen Miscoot on multiple occasions parked down the street from AV1's residence and that Miscoot had recently challenged him about AV1's whereabouts and made threatening statements when AW1 told him to leave.

Miscoot was initially indicted on state charges following his arrest on November 8, 2023, and he remained in state custody on those charges until October 1, 2024, when he was transferred to federal custody. In the days following his arrest, Miscoot made at least two calls from jail in which he stated that the only way he would get released from jail was if AV1 dropped the charges. He

further stated that he was told he couldn't have contact with AV1 and therefore he couldn't tell her to drop the charges.

## III. ARGUMENT

Miscoot planned and executed the kidnapping and rape of his ex-girlfriend at gunpoint and now faces decades in prison for his crimes. His offense was egregious, violent, and dangerous. He subjected AV1 to repeated, unwanted calls and texts and visits to her home for a year before escalating to hands-on violence and sexual assault. He forced her at gunpoint to get into his car and then drove her away from her home, to a remote area in another state, in order to rape and assault her. He threatened to further harm her and her family if she reported the assault to law enforcement, and returned to her home six days after she reported. He should remain in custody as a danger to the community and a flight risk.

### A. *No Combination of Conditions Can Reasonably Assure the Safety of the Community*

Defendant's release would pose a danger to AV1 and the community at large and no condition or combination of conditions can reasonably assure either are safe from this offender. Defendant has already shown a repeated, consistent, escalating pattern of unwanted contact with AV1. For a year since their break-up, he continued to contact her and visit her residence despite the requests of AV1 and her family to stop. Throughout the duration of his kidnapping and assault of AV1 on November 2nd, Miscoot repeatedly threatened her life and safety and the safety of her family members, including children. He warned her repeatedly not to report the kidnapping and rape to law enforcement. AV1 did report what happened, and Miscoot returned to her residence less than a week later and was arrested outside of her house. AV1 is justifiably terrified that defendant will be released and make good on his previous threats of retaliation. Conditions of release—particularly those that depend on defendant's compliance—cannot adequately assure AV1's safety.

First, there are no combination of conditions that will prevent him from contacting AV1, obtaining weapons, or returning to AV1's residence, a location he knows well and is only a short distance from the residence where he intends to reside if released. Defendant asks to be released into the same familial and residential environment he was in when he possessed firearms, repeatedly contacted AV1 at her residence, and ultimately abducted and assaulted her. Defendant's pattern of returning to AV1's residence and his threats against her life for reporting the assault to law enforcement should cause the Court great concern that, should he decide to evade his pretrial release conditions and contact AV1, the results may be lethal. That risk is simply too great to be adequately mitigated by pretrial release conditions, particularly when the proposed conditions involve outpatient treatment and residing in the same community environment as before, in close proximity to the victim. Additionally, defendant's own actions demonstrate that he cannot be trusted to be compliant or candid with his pretrial services officer, an absolute prerequisite to success on pretrial release. During his kidnapping and rape of AV1, defendant repeatedly threatened her safety and the safety of her family if she reported his crimes to law enforcement. When interviewed by police, defendant could have invoked his right to remain silent, but chose instead to lie repeatedly to the officers. He also insinuated on multiple jail calls that he would be released from jail if AV1 were told to "drop the charges," but that he could not do it himself. A defendant who intimidates witnesses and lies to police cannot be trusted to be honest and compliant while on supervision, particularly when the consequences of non-compliance are so dire. Finally, defendant would continue to have access to lethal weapons if released, and there are no conditions that would ensure he does not possess such weapons. According to defendant's own statements, the weapons in his possession were obtained by non-legal means through familial connections. In the days leading up to his arrest, defendant was in possession of at least two firearms and a crossbow. At least one of

those weapons, the pistol used in the assault, was not recovered by law enforcement. There is no condition or combination of conditions that could effectively prevent defendant from retrieving that pistol or obtaining another weapon and following through on his numerous threats against AV1 and her family.

Second, defendant does not even need to make physical contact for AV1 to feel the effects of his dangerousness. No combination of conditions can adequately assure this Court that he will not find a way to get a message to AV1 or her family members to prove to her what she already fears: that reporting his abuse will not keep her safe. *See United States v. Pardo*, No. 2:22-cr-00151-LK, 2022 WL 16553286, at *5 (W.D. Wash. Oct. 31, 2022) (finding that assaulting a domestic partner is a serious issue that impacts the safety of the domestic partner and the community). Defendant already returned once to AV1's residence after the assault, and was stopped only by the ability of AV1 to quickly contact the police and the concerted effort of law enforcement to take him into custody. Defendant has shown he was willing to take such risks when his freedom was at stake; now that he faces decades in prison for his crimes, there is no condition or combination of conditions that can reasonably assure the safety of the community if he were released.

Finally, there is no information to suggest that defendant's release to participate in outpatient treatment would address defendant's danger to AV1 and the community. Defendant's self-reported substance use does not appear to be a factor in the events of this case. There is no indication in any of the records available that substance use played any part in his repeated, unwanted contact with AV1 over the year prior, or in the planning or execution of his violent assault against AV1. In fact, there is no indication that the proposed substance abuse treatment would have any meaningful effect on defendant at all. According to the report of social worker

Daniel Steckler, the defendant, a 26-year-old man, was taking a hit or two of marijuana a day, binge drinking on the weekends, and very occasionally using cocaine before he was arrested over a year ago. Defendant has presumably been sober while in custody. He states that while he would like to stop using marijuana and cocaine, he intends to keep drinking but "maybe drink less" so that he can "spend less money than I'm used to on alcohol." Even assuming that alcohol use did play a role in the instant offense, defendant's own statement that he intends to resume drinking if released demonstrates that the proposed treatment plan cannot adequately address the danger he poses. There are simply no conditions that can reasonably assure the safety of the community or AV1 if defendant were released.

*B. No Combination of Conditions Can Reasonably Assure Miscoot's Appearance*

No condition or combination of conditions can reasonably assure that Miscoot makes his court appearances as required. Although Miscoot does appear to have standing ties to Oregon and was minimally employed prior to his incarceration, given the nature of the charges he is facing it is unlikely he will have significant employment prospects if released. He would, however, have a strong incentive to flee from prosecution. He faces serious firearm, domestic violence, and kidnapping charges, and a conviction will likely result in a lengthy prison sentence. As a baseline, his federal charges carry a possible life sentence and a consecutive ten-year mandatory minimum. Miscoot's offense conduct included multiple aggravating factors that will significantly increase his advisory sentencing guidelines range, including the rape of the victim and the use of a firearm during the course of the assault. These and other applicable enhancements, even considering his lack of criminal history, put Miscoot's guidelines at a significant period of imprisonment, in excess of thirty years. Many young adults, even those with strong ties to the community, move away from home in their mid-twenties for far less compelling reasons than the likelihood of decades in prison.

Given the significant sentence Miscoot is facing, there are no conditions that can reasonably assure his appearance as required.

## III. CONCLUSION

Given the significant danger to the community presented by the instant offense, the defendant's lack of remorse, his demonstrated efforts and ability to repeatedly contact the victim at her residence, and the significant sentence he faces if convicted, the defendant presents an unacceptable danger to the community and risk of non-appearance if released. The government respectfully requests that the Court order that Miscoot remain in custody pending trial.

DATED: November 21, 2024.

Respectfully submitted,

NATALIE K. WIGHT
United States Attorney

*/s/ Mira Chernick*
MIRA CHERNICK, MSB #696845
Assistant United States Attorney